THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RJ&CS SC HOLDINGS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DR. RANDY E. WOODWARD DC, PC, a Utah professional corporation, and RANDY E. WOODWARD, an individual,<br><br>Defendants. | **ORDER GRANTING DEFENDANTS' [9] RULE 12(b)(6) MOTION TO DISMISS**<br><br>Case No. 2:23-cv-000127-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Defendants Dr. Randy E. Woodward DC, PC ("Woodward") and Randy E. Woodward's ("Dr. Woodward") (collectively "Defendants") Rule 12(b)(6) Motion to Dismiss.[1] Defendants move to dismiss Plaintiff RJ&CS SC Holdings, LLC's ("RJ&CS") Complaint[2] for failure to state a claim. Having considered the filings and relevant law, the court resolves the matter on the briefs.[3] For the reasons below, the court grants Defendants' motion.

## BACKGROUND[4]

Woodward held 50 percent of the membership interests in Integrated Holding Company, LLC (the "Company").[5] The Company owns several LLCs including a pain clinic and three surgical centers.[6] In early 2021, Defendants contacted RJ&CS about selling Woodward's

---

[1] Rule 12(b)(6) Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 9, filed May 5, 2023.
[2] Compl., ECF No. 1, filed Feb. 17, 2023.
[3] *See* DUCivR 7-1(g).
[4] The court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to . . . the non-moving party." *Johnson v. Reyna*, 57 F.4th 769, 774 (10th Cir. 2023).
[5] Compl. ¶¶ 8, 10.
[6] *Id.* at ¶ 9.

1

interests.[7] The two parties exchanged emails and telephone calls,[8] and Defendants provided a summary of performance and expectations.[9] RJ&CS alleges Defendants stated the following about the Company:

- Actual revenue was over $2 million annually.[10]

- RJ&CS would collect $2,758,154 after expenses.[11]

- "An in-process switch of billing companies will make a drastic decrease to overhead or increase to profits, increasing take[-]home by a significant amount."[12]

- "Ownership in the Company means [an owner] can function as 'semi-retired.'"[13]

- "[T]he day-to-day operations do not rely on [the owners]."[14]

- "Seller is not the face of the practice and hasn't treated patients for over 4 years."[15]

- "[O]wners can 'accomplish[] these numbers without actually working in the clinic at all or seeing patients.'"[16]

- "Center is in a high growth cycle, which increases business sale[s] multiple."[17]

- "[C]ollections are just beginning to ramp up, allowing profit to increase."[18]

- Defendants used the following terms: "expected"; "anticipated collection"; "profit"; "we expect"; "that amount would be"; "my half is"; and "likely to collect[.]"[19]

---

[7] *Id.* at ¶ 15.
[8] *Id.* at ¶¶ 17, 50; *see* Ex. A. The court can properly consider the Complaint's exhibits. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference[.]").
[9] Compl. ¶ 18; *see* Ex. B; Ex. C.
[10] Compl. ¶ 23(a); Ex. B, at 2–5 (Seller's distributions from May 2020 to April 2021 as $2,013,114.)
[11] Compl. ¶ 35; Ex. B, at 5.
[12] Compl. ¶ 23(b); Ex. A, at 2.
[13] Compl. ¶ 23(c) (quoting Ex. C, at 2).
[14] *Id.* (second alteration in original) (quoting Ex. C, at 2).
[15] *Id.* (quoting Ex. B, at 3).
[16] *Id.* (quoting Ex. C, at 2).
[17] *Id.* at ¶ 23(d) (quoting Ex. B, at 4).
[18] Compl. ¶ 23(e) (quoting Ex. C, at 2).
[19] *Id.* at ¶ 24 (quoting Ex. B, at 1–2).

RJ&CS interpreted Defendants' statements as signifying the "Company was an extremely profitable health and wellness and pain management provider with no clear issues."[20] Based on Defendants' "favorable representations[,]" RJ&CS purchased Woodward's interests for $5,758,154.[21] In May 2021, RJ&CS signed the Membership Interest Purchase Agreement (the "Agreement")[22] and paid Defendants $1 million.[23] It financed the rest with a promissory note.[24]

After assuming Woodward's interests, RJ&CS alleges it discovered Defendants did not disclose (a) "[t]he actual amount of involvement and work [that] ownership in the Company requires";[25] (b) how one client accounted for about $800,000, which was a "a significant portion of the annual revenue Defendants presented to [RJ&CS]";[26] and (c) a reduction in payout due to the $800,000 client switching insurance companies.[27]

The "returns" for the surgical center's billing company were above industry "standard."[28] As such, RJ&CS alleges Defendants knew or should have known the billing company was engaging in fraud and that the insurance provider would refuse reimbursement.[29] It also alleges Defendants disclosed no issues "pertaining to the Company" except for the fact that the surgical center's collection history is thirteen months long and there is uncertainty as to the insurance

---

[20] *Id.* at ¶ 16.
[21] *Id.* at ¶¶ 12, 25–26.
[22] Ex. D, at 43–53.
[23] Compl. ¶ 27.
[24] *Id.* at ¶¶ 12, 28.
[25] *Id.* at ¶ 30(a).
[26] *Id.* at ¶¶ 30(b), 36.
[27] *Id.* at ¶ 30(c). RJ&CS also alleges that "while Defendants disclosed the Company's profits and losses, [they] failed to specify that a large portion of profits, approximately $800,000, came from one client account." *Id.* at ¶ 36.
[28] Compl. ¶ 33.
[29] *Id.* at ¶¶ 33–34.

companies.[30] Additionally, RJ&CS alleges Woodward knew that the "$800,000 client" had switched insurance providers before Woodward sought to sell its interests.[31]

RJ&CS claims it has collected only about $750,000, even though Defendants represented it would collect $2,758,154.[32] It alleges Defendants' misrepresentations and omissions were material to its decision to buy Woodward's interests,[33] it justifiably and reasonably relied on Defendants' statements,[34] and it would not have purchased the interests had it known the truth.[35]

RJ&CS filed its Complaint on February 17, 2023.[36] It alleges federal securities fraud,[37] state securities fraud,[38] and common-law claims for fraud, deceit, negligent misrepresentation, unjust enrichment, and recission.[39] On May 5, 2023, Defendants moved to dismiss.[40] RJ&CS filed its Opposition on June 12, 2023.[41] Defendants submitted a reply brief six days later.[42]

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must state a plausible claim for relief on the face of a well-pleaded complaint."[43] The court "accept[s] all well-pleaded factual allegations in the complaint as true and constru[es] them in the light most favorable to the

---

[30] *Id.* at ¶ 21.
[31] *Id.* at ¶¶ 38–39.
[32] *Id.* at ¶ 35.
[33] Compl. ¶¶ 31, 41.
[34] *Id.* at ¶ 78.
[35] *Id.* at ¶¶ 32, 37, 42.
[36] *See id.*
[37] *Id.* at ¶¶ 44–60.
[38] Compl. ¶¶ 61–69.
[39] *Id.* at ¶¶ 70–92.
[40] *See* Mot. to Dismiss.
[41] *See* Opp'n to Mot. to Dismiss ("Opp'n"), ECF No. 13.
[42] *See* Defs. Reply Regarding Rule 12(b)(6) Mot. to Dismiss ("Reply"), ECF No. 21.
[43] *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); Fed. R. Civ. P. 12(b)(6).

plaintiff[.]"[44] "A plaintiff must go beyond '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' and plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[45] And a "§ 10(b) plaintiff 'bears a heavy burden at the pleading stage.'"[46] Plaintiffs must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter."[47]

## DISCUSSION

Defendants move to dismiss under Rule 12(b)(6) RJ&CS's claims for federal securities fraud, state securities fraud, common-law fraud and deceit, and negligent misrepresentation. The court begins with the federal securities claims.

### I. RJ&CS Fails to Meet the High Pleading Standard for a Federal Securities Action.

"Section 10(b) of the Securities Exchange Act and Rule 10b–5 . . . 'prohibit making any material misstatement or omission in connection with the purchase or sale of any security.'"[48] Section 10(b)'s purpose is "to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry."[49]

---

[44] *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1339 (10th Cir. 2012) (citations omitted); *see McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1143 (10th Cir. 2023) (alteration in original) ("A court need not accept legal conclusions as true, but '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))).

[45] *Audubon of Kan.*, 67 F.4th at 1108 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). "Plaintiffs must nudge the claim across the line from conceivable or speculative to plausible"; "[a]llegations that are '"merely consistent with" a defendant's liability' stop short of that line." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 477 (2021) (citations omitted).

[46] *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (quoting *Weinstein v. McClendon,* 757 F.3d 1110, 1112 (10th Cir. 2014)).

[47] *Id.* (citation omitted); *see Tellabs*, 551 U.S. at 313 ("Exacting pleading requirements are among the control measures Congress included in the PSLRA.").

[48] *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).

[49] *Lorenzo v. SEC*, __ U.S. ___, 139 S. Ct. 1094, 1103 (2019) (quoting *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963)).

"To establish a violation . . . , a plaintiff must prove: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"[50] Only the first two elements are at issue.

"Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a heightened pleading standard applies" to the first two elements.[51] To defeat a Rule 12(b)(6) motion, "a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'"[52] "[T]he plaintiff must, 'with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required'" mental state.[53]

With the standard in mind, the court turns to whether RJ&CS sufficiently pleads materiality, falsity, and scienter.

### A.  RJ&CS Plausibly Alleges Material Misrepresentations and a Material Omission.

RJ&CS alleges Defendants made five misrepresentations and three omissions.[54] To satisfy § 10(b)'s first element, the "plaintiff must allege facts showing the defendant made an

---

[50] *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022) (quoting *Halliburton*, 573 U.S. at 267).
[51] *Level 3*, 667 F.3d at 1333 (citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003)).
[52] *Id.* (quoting 15 U.S.C. § 78u–4(b)(1)).
[53] *Id.* (quoting § 78u–4(b)(2)); *see Tellabs*, 551 U.S. at 321 ("The 'strong inference' standard 'unequivocally raise[d] the bar for pleading scienter[.]'" (alteration in original) (citation omitted)); *Smallen*, 950 F.3d at 1305 ("A plaintiff asserting a claim under Section 10(b) bears a heavy burden at the pleading stage . . . .").
[54] Compl. ¶¶ 23, 30. Without any elaboration, RJ&CS also summarily alleges Defendants used the terms "expected"; "anticipated collection" and "profit"; "we expect"; "that amount would be"; "my half is"; and "likely to collect[.]"

6

untrue statement of material fact, or failed to state a material fact necessary to make the statements that were made not misleading."[55]

The court first decides if any alleged misrepresentations or omissions are immaterial.[56] An alleged "statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell [interests]."[57] Courts have "distinguished between statements that are material and those that are 'mere puffing . . . [and] not capable of objective verification.'"[58] "In determining whether a statement is puffery, the context matters."[59] "Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions."[60] "'[P]ure statements of opinion,' and 'statements of optimism that are not capable of objective verification' are *not* material misstatements *unless* they inaccurately represent 'the speakers' beliefs concerning then-present factual conditions[.]'"[61]

The court begins with the alleged misrepresentations. RJ&CS first alleges Defendants misrepresented the fact that "actual revenue to be collected was over $2 million."[62] This statement is not puffery; it is objectively verifiable. RJ&CS also alleges that "Defendants

---

*Id*. at ¶ 24. RJ&CS does not discuss the importance and context of these words and phrases, making it impossible to discern whether they are plausibly material or false.
[55] *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) (citing 17 C.F.R. § 240.10b–5).
[56] Defendants also contend RJ&CS pleads "scheme liability." Mot. to Dismiss 21–22. RJ&CS, however, disavows any pleading under a "scheme liability" theory. Opp'n 10 n.3. The court therefore does not discuss it.
[57] *Grossman*, 120 F.3d at 1119.
[58] *Pluralsight*, 45 F.4th at 1248 (quoting *Level 3*, 667 F.3d at 1339). "Puffery comprises generalized, vague, nonquantifiable statements of corporate optimism." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183–84 (2015)).
[59] *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009).
[60] *Level 3*, 667 F.3d at 1339; *see Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (Learned Hand, J.) ("There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity.").
[61] *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1299 (10th Cir. 2018) (alteration in original) (internal quotation marks omitted) (citations omitted).
[62] Compl. ¶ 23(a).

7

represented that [RJ&CS] would collect $2,758,154, after expenses[.]"[63] A reasonable investor would consider profitability an important factor. And as discussed below, RJ&CS alleges Defendants omitted a key fact as to profitability.[64] In context, such statements might lead a reasonable investor to think he would achieve certain revenue.[65]

Next, Defendants allegedly misrepresented that switching to a new billing company would significantly decrease overhead.[66] Defendants' statement was more than rosy optimism. In an email to RJ&CS, Dr. Woodward stated Defendants *were* "in the process of switching to a new billing company" that "charges about half [of 15% of gross collections]" and "[f]or this past month, that *would* amount[] to an increase in . . . take[-]home of about $43,000, a significant amount."[67] Defendants presented the statement as a concrete fact—not a vague belief. And Defendants did not qualify the statement.[68] The statement thus "cross[ed] the line from corporate optimism and puffery to objectively verifiable matters of fact."[69] A reasonable investor might rely on such a statement because it indicated a significant increase in monthly profit.

RJ&CS also alleges Defendants misrepresented how much owners needed to work to manage the Company's interests. It claims Defendants represented that Company ownership was

---

[63] *Id.* at ¶ 35.
[64] *Id.* at ¶ 30(b) ("One client account for approximately $800,000 accounted for a significant portion of the annual revenue Defendants presented to [RJ&CS].").
[65] *See Grossman*, 120 F.3d at 1120 ("'[S]tatements must be analyzed in context' when determining whether or not they are materially misleading." (citation omitted)).
[66] Compl. ¶ 23(b).
[67] Ex. A, at 2 (emphases added).
[68] *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996) ("[B]ecause the totality of the company's statements were generally cautious, 'projections therein which are however *qualified* by assorted variables outside the control of the speakers, may not be looked to for a cause of action.'" (emphasis added) (citation omitted)).
[69] *Level 3*, 667 F.3d at 1340; *see Pluralsight*, 45 F.4th at 1249 ("Saying that a project is 'progressing well' is likely not actionable, but saying it is '90% done' potentially is."); *Grossman*, 120 F.3d at 1123 ("[These statements cannot be dismissed as mere corporate optimism, because each of these statements could have, and should have had, some basis in objective and verifiable fact.").

akin to "mailbox money" where the "owners sit back and get paid."[70] The four specific alleged misrepresentations are: (i) "We have been functioning as semi-retired";[71] (ii) "The day-to-day operations do not rely on us";[72] (iii) "Seller is not the face of the practice and hasn't treated patients for over 4 years";[73] and (iv) "[Owners] are each accomplishing these numbers without actually working in the clinic at all or seeing patients."[74] None of these statements would appear to a reasonable investor as opinions. Instead, these statements would appear to be verifiable facts. They describe how little the present owners have to work at the clinic or take part in day-to-day operations. A reasonable investor would attach importance to these representations—that he would earn profits without having to significantly participate in daily operations.

Defendants' fourth and fifth alleged misrepresentations are that the "[c]enter is in a high growth cycle, which increases business sale[s] multiple"[75] and that "collections are just beginning to ramp up, allowing profit to increase."[76] Unlike the other representations, these two statements lack concreteness.[77] Defendants do not explain to RJ&CS what a "high growth cycle" means. And the statement about collections "just beginning to ramp up" offers no starting point or benchmark, nor does it explain how much profits will increase. As such, these two statements

---

[70] Compl. ¶ 20.
[71] *Id.* at ¶ 23(c); *see* Ex. C, at 2.
[72] Compl. ¶ 23(c); *see* Ex. C, at 2.
[73] Compl. ¶ 23(c); *see* Ex. B, at 3.
[74] Compl. ¶ 23(c); *see* Ex. C, at 2.
[75] Compl. ¶ 23(d); *see* Ex. B, at 4.
[76] Compl. ¶ 23(e); *see* Ex. C, at 2.
[77] *See Pluralsight*, 45 F.4th at 1249 ("[T]o be actionable, . . . statements must be grounded in concrete metrics or other objectively verifiable data.").

are effectively vague optimism and not material misrepresentations.[78] No reasonable investor would rely on such "generalized statements . . . that are not capable of objective verification."[79]

As to omissions, RJ&CS alleges Defendants failed to divulge: (a) the actual amount of work that ownership requires; (b) how one client account represented $800,000 of annual revenue; and (c) how the $800,000 client account switched insurance providers before the deal.[80]

The Complaint says little about the first alleged omission—the amount of work required.[81] RJ&CS points to no authority indicating a duty to disclose or reason to expect a disclosure regarding necessary effort.[82] To the contrary, the amount of involvement and work required is an issue here because of the alleged affirmative misrepresentations about lack of day-to-day involvement, not treating patients, being semi-retired, and receiving "mailbox money."[83] The amount-of-effort omissions claim does not stand alone and adds nothing to the misrepresentations claim.

Turning to the $800,000-client omission, RJ&CS alleges Defendants failed to disclose that "[o]ne client account for approximately $800,000 accounted for a significant portion of the annual revenue . . . presented to [RJ&CS]."[84] It further alleges that "while Defendants disclosed

---

[78] *See, e.g.*, *Level 3*, 667 F.3d at 1340 (finding as immaterial "defendants' general, forward-looking expressions of confidence in future integration progress").
[79] *SEC v. GenAudio Inc.*, 32 F.4th 902, 927 (10th Cir. 2022) (quoting *Grossman*, 120 F.3d at 1119).
[80] Compl. ¶ 30.
[81] "[T]he complaint must 'specify each statement alleged to have been misleading [and] the reasons why the statement is misleading[.]" *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1109 (10th Cir. 2015).
[82] *See Pluralsight*, 45 F.4th at 1247 ("[W]hen the claim is for omission of a material fact, the plaintiff must show the defendant had a duty to disclose the omitted information." (alteration in original) (citation omitted)). Section 10(b) does not "create an affirmative duty to disclose any and all material information. Disclosure is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* at 1248 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). "[I]f a defendant makes a statement on a particular issue, and that statement is false or later turns out to be false, the defendant may be under a duty to correct any misleading impression left by the statement." *Grossman*, 120 F.3d at 1125.
[83] Compl. ¶ 20.
[84] *Id.* at ¶ 30(b).

the Company's profits and losses, [they] failed to specify that a large portion of profits, approximately $800,000, came from one client account."[85] The court previously found as material the misrepresentation that "[a]ctual revenue to be collected was over $2 million."[86] Given the context, a reasonable investor also would consider important that one client account represented thirty to forty percent of the over $2 million in expected annual revenue.

The last alleged omission about the client switching insurance companies could be material, but the Complaint does not plead facts making materiality plausible. For example, there are no fact allegations contextualizing the omission that would permit an inference that this particular patient's switch to a different insurance provider had such an impact on profitability that Defendants "significantly altered the 'total mix' of information made available" to RJ&CS by not disclosing the information.[87]

In sum, three alleged misrepresentations and one alleged omission meets the materiality standard for pleading purposes.

### B. RJ&CS Sufficiently Pleads Falsity Only as to the Amount Plaintiff Would Collect.

The court turns to whether RJ&CS meets the heightened pleading standard for falsity. "To sufficiently plead falsity, the complaint must allege facts to 'support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading.'"[88] Factors aiding the court's analysis include whether the Complaint offers factual details, the number of facts

---

[85] *Id.* at ¶ 36.
[86] *Id.* at ¶ 23(a).
[87] *Matrixx Initiatives*, 563 U.S. at 38 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)).
[88] *Pluralsight*, 45 F.4th at 1248 (quoting *Hampton*, 897 F.3d at 1298); *see Level 3*, 667 F.3d at 1341 ("[W]e must decide whether the complaint specifies 'the reason or reasons why th[e] [remaining] statements are misleading.'" (alterations in original) (quoting *Adams*, 340 F.3d at 1097)).

alleged, the alleged facts' coherence and plausibility, the source of plaintiff's factual knowledge, source reliability, and "any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading."[89]

Filtering out the immaterial statements, RJ&CS's allegations resolve to the following:

- Defendants misrepresented that "[a]n in-process switch of billing companies will make a drastic decrease to overhead or increase to profits, increasing take home by a significant amount."[90]

- Defendants misrepresented that "[o]wnership in the Company means you can function as 'semi-retired' and 'the day-to-day operations do not rely on [the owners].' 'Seller is not the face of the practice and hasn't treated patients for over 4 years.' Thus, owners can 'accomplish these numbers without actually working in the clinic at all or seeing patients.'"[91]

- Defendants misrepresented that "[a]ctual revenue to be collected was over $2 million"[92] and they omitted the fact that "[o]ne client account for approximately $800,000 accounted for a significant portion of the annual revenue Defendants presented to Plaintiff."[93]

The court addresses each allegation in order. To start, the Complaint lacks any facts to show how the in-process-switch-of-billing-companies misrepresentation is allegedly false or misleading. Without any supporting facts, the court cannot say that a reasonable belief exists that the statement was false or misleading. Likewise, RJ&CS offers mere conclusory allegations as to the amount of work required. The Complaint contains no facts as to why Defendants' work-related misrepresentations were false or misleading.

---

[89] *Hampton*, 897 F.3d at 1299 (citation omitted).
[90] *Id.* at ¶ 23(b).
[91] *Id.* at ¶ 23(c) (citations omitted).
[92] *Id.* at ¶ 23(a).
[93] *Id.* at ¶ 30(b).

12

Last, the pleaded facts "support the conclusion that a reasonable person would believe" the statement and omission concerning revenue was false or misleading.[94] The Complaint alleges Defendants told RJ&CS it would collect over $2 million in revenue.[95] But RJ&CS allegedly collected around $750,000.[96] RJ&CS further alleges Defendants disclosed the Company's returns but omitted a vital fact: "that a large portion of profits, approximately $800,000, came from one client account."[97] In context, one could reasonably infer Defendants misled RJ&CS because they did not disclose how one client represented thirty to forty percent of annual revenue even though they knew "that amount would not be replicated."[98] "Drawing all reasonable inferences in favor of [RJ&CS],"[99] the Complaint thus plausibly alleges Defendants falsely misrepresented how RJ&CS would collect over $2 million annually.

For these reasons, RJ&CS sufficiently pleads materiality and falsity for at least one misrepresentation and omission.

### C. RJ&CS Fails to Adequately Plead Scienter.

"Scienter is an essential element" for Section 10(b) claims.[100] It is "'a mental state embracing intent to deceive, manipulate, or defraud,' or recklessness."[101] "[R]ecklessness . . . is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor

---

[94] *See Adams*, 340 F.3d at 1099.
[95] Compl. ¶ 23(a); *see id.* at ¶ 35 ($2,758,154 after expenses).
[96] *Id.* at ¶ 35.
[97] *Id.* at ¶ 36.
[98] *Id.* at ¶ 37.
[99] *Level 3*, 667 F.3d at 1343 (citing *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1188 (10th Cir. 2003)).
[100] *Anderson v. Spirit AeroSystems Holdings, Inc.*, 827 F.3d 1229, 1236 (10th Cir. 2016), *as amended* (July 6, 2016).
[101] *Adams*, 340 F.3d at 1105 (quoting *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1259 (10th Cir. 2001)).

must have been aware of it."[102] "Under the PSLRA, a plaintiff must, 'with respect to each act or omission alleged[,] . . . state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind.'"[103] For omissions, "[a] plaintiff must show: '(1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors.'"[104] Courts consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."[105] "The standard for pleading scienter . . . is high."[106] "Although an inference of scienter 'need not be irrefutable, *i.e.*, of the "smoking-gun" genre,' it 'must be more than merely plausible or reasonable.'"[107] "A complaint will survive . . . if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[108]

RJ&CS asserts it satisfies the scienter requirement for two reasons. First, Defendants allegedly knew before contacting RJ&CS about purchasing Woodward's interests that the $800,000 client switched insurance providers and that the switch would cause a significant decrease in profits.[109] And RJ&CS alleges Defendants knew or should have known before the

---

[102] *Level 3*, 667 F.3d at 1343 n.12 (citation omitted); *see Smallen*, 950 F.3d at 1305 ("In the securities-fraud context, recklessness is akin to conscious disregard—allegations of negligence or even gross negligence fall 'below the high threshold for liability under Section 10(b) of the Exchange Act.'" (citation omitted)).
[103] *Pluralsight*, 45 F.4th at 1259 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). "Though the PSLRA imposes a heightened burden . . . , we must first apply general pleading standards when evaluating the underlying factual allegations—that is, 'accept[ ] all well-pleaded factual allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff.'" *Id.* at 1261 (alterations in original) (citation omitted).
[104] *Zagg*, 797 F.3d at 1200–01 (quoting *Weinstein v. McClendon*, 757 F.3d 1110, 1113 (10th Cir. 2014)).
[105] *Tellabs*, 551 U.S. at 323.
[106] *Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256, 1269 (D. Utah 2002).
[107] *Smallen*, 950 F.3d at 1305 (quoting *Tellabs*, 551 U.S. at 324).
[108] *Zagg*, 797 F.3d at 1202 (citation omitted); *see Tellabs*, 551 U.S. at 324 ("The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?").
[109] Compl. ¶¶ 38–39.

Agreement that a surgical center's billing company engaged in fraud.[110] For their part, Defendants contend RJ&CS's scienter allegations are not "strong, cogent or compelling[.]"[111]

The question is whether the allegations "support[] a strong inference that [Defendants] knew [the] . . . statement[s] . . . presented a danger of misleading buyers . . . or that the danger was so obvious [they] must have known of it."[112] To this end, RJ&CS offers four allegations it contends show scienter:

- "Upon information and belief, Defendants were aware that the one client account eventually changed insurance providers, which did not pay out to providers as well as before—a huge loss for the Company."[113]

- "Upon information and belief, two to three months after finding the one client account that generated $800,000 was switching insurance providers[,] Woodward reached out to [RJ&CS] to sell its [i]nterests and did not disclose these issues."[114]

- "Defendants knew or should have known that the billing company for the surgical center was committing fraud when its return amounts were above industry standard before entering into the Agreement."[115]

- "Defendants knew or should have known that Blue Cross and Blue Shield would not pay because it was aware of the billing company's potential fraud."[116]

In determining whether RJ&CS adequately pleads scienter, the court must "accept[] all well-pleaded factual allegations in the complaint as true and constru[e] them in the light most favorable to [RJ&CS]."[117] But the court need not accept conclusory allegations.[118] RJ&CS pleads

---

[110] *Id.* at ¶ 33.
[111] *See* Reply 8–9.
[112] *Pluralsight*, 45 F.4th at 1259.
[113] Compl. ¶ 38.
[114] *Id.* at ¶ 39.
[115] *Id.* at ¶ 33.
[116] *Id.* at ¶ 34.
[117] *Pluralsight*, 45 F.4th at 1261 (alterations in original) (citation omitted).
[118] *See Clinton*, 63 F.4th at 1275 ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement.").

insufficient concrete facts as to Defendants' knowledge. It is certainly possible that Defendants knew that one of their largest clients planned to switch insurance providers and that the switch could lead to profit loss. But given the dearth of well-pleaded facts,[119] there is no compelling basis for inferring that RJ&CS knew that the client's change in providers would lead to "huge loss[es]."[120] What is more, RJ&CS pleads scienter based "[u]pon information and belief."[121] The plaintiff must therefore "state with particularity all facts on which that belief is formed" "[i]n order to overcome a motion to dismiss[.]"[122] RJ&CS fails to do so here.

Turning to the billing company fraud allegation, one could infer that Defendants' knowledge as to the billing company's higher-than-average returns meant Defendants might have known about the fraud. Yet under the alleged facts, there is no strong or compelling basis for inferring that Defendants thought the company had high returns *because of* fraud. By definition, averages consist of numbers which are both higher and lower than the average. The difference between a higher result and a lower result could be fraud, but it also could be effort or skill. Besides, RJ&CS pleads no detailed facts linking the alleged fraud, or knowledge of it, to Defendants. It merely summarily pleads Defendants "were aware" or "knew or should have known" about insurance fraud and impending profit loss.[123] The bare-bones allegations considered together are not enough to show scienter under PSLRA's heightened pleading standard.[124]

---

[119] The Complaint's supporting documents contain no facts relevant to scienter. *See* Exs. A–C.
[120] Compl. ¶ 38.
[121] *Id.* at ¶¶ 38–39.
[122] *Pluralsight*, 45 F.4th at 1247 (citation omitted).
[123] Compl. ¶¶ 33–34.
[124] *See Anderson*, 249 F. Supp. 2d at 1270 ("General allegations that . . . [d]efendants had access to information is not sufficient to allege scienter because [p]laintiffs do not specify what the information was and how the information

Viewing the factual allegations in the light most favorable to RJ&CS, the alleged inferences are not powerful, cogent, and compelling.[125] They are too broad.[126] RJ&CS fails to sufficiently allege Defendants knew that their statements and omissions marked a danger of misleading investors or knew that the danger was so obvious they must have known about it. At bottom, RJ&CS does not satisfy its "heavy burden" under PSLRA's heightened pleading standard.[127] The court thus dismisses the federal securities claims.[128]

## II. The Court Declines to Exercise Supplemental Jurisdiction Over State-Law Claims.

Having dismissed all federal claims, only state-law claims remain. The court has broad discretion over whether to exercise supplemental jurisdiction over these claims since it has original jurisdiction over federal causes of action.[129] "Supplemental jurisdiction covers . . . claims 'so related' to federal claims that they are 'part of the same case or controversy under Article III,' in that they 'derive from a common nucleus of operative fact.'"[130] That standard is satisfied here.[131]

---

should have alerted each of these [d]efendants that the alleged misstatements were false." (citing *Fleming*, 264 F.3d at 1265)).

[125] *See, e.g.*, *Smallen*, 950 F.3d at 1311–12 (affirming lower court's dismissal of plaintiff's Section 10(b) claims because "[p]laintiff supplie[d] few, if any, particularized facts giving rise to a strong inference any of the . . . [d]efendants intentionally mispresented when they made their alleged misstatements").

[126] *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1161 (10th Cir. 2015). "Plaintiff['s] general, conclusory assertions to the contrary are not sufficient to satisfy the PSLRA's requirement of particularized facts." *Fleming*, 264 F.3d at 1265.

[127] *Smallen*, 950 F.3d at 1305.

[128] Compl. ¶¶ 44–60 (Counts I–III). Defendants also contend RJ&CS fails to allege sufficient facts to show the sale of Woodward's interests was a "security" under federal law. Mot. to Dismiss 22–23. They argue the transaction does not resemble an "investment contract." *Id.* at 22 (citing *SEC v. W. J. Howey*, 328 U.S. 293 (1946)). Yet RJ&CS paid for part of Woodward's interests by promissory note. Compl. ¶¶ 12, 14, 28. The Securities Act of 1933 recognizes a note as a "security." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 847 (1975) (citing 15 U.S.C. § 77b(1)). As a result, Defendants' argument founders.

[129] 28 U.S.C. § 1331.

[130] *Home Depot U. S. A., Inc. v. Jackson*, __ U.S. ___, 139 S. Ct. 1743, 1753 n.1 (2019) (Alito, J., dissenting) (citing 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U. S. 715, 725 (1966)); *see Pettigrew v. Oklahoma ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013).

[131] *See* Compl. ¶¶ 61, 70, 81, 86 ("Plaintiff incorporates the foregoing paragraphs as if restated in their entirety.").

Still, a court may decline supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction[.]"[132] And "the court . . . usually should[.]"[133] "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[134] Here, the court finds no compelling reason to exercise supplemental jurisdiction. The court accordingly declines to exercise supplemental jurisdiction over RJ&CS's state-law claims.[135]

## ORDER

For the above reasons, the court GRANTS Defendants' Rule 12(b)(6) Motion to Dismiss.[136] Plaintiff's federal securities claims are DISMISSED without prejudice for failure to state a claim. The court declines to exercise supplemental jurisdiction over the remaining state law claims, DISMISSING them without prejudice. Plaintiff may seek leave to amend its Complaint within sixty (60) days of this Memorandum Decision and Order.

Signed August 31, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[132] *Artis v. District of Columbia*, 583 U.S. 71, 76 (2018) (quoting § 1367(c)); *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("[P]endent jurisdiction 'is a doctrine of discretion, not of plaintiff's right[.]'" (quoting *Gibbs*, 383 U.S. at 726)).
[133] *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice." (citing *Gibbs*, 383 U.S. at 726)).
[134] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("[C]ourts [should] handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity[.]").
[135] Compl. ¶¶ 61–92 (Counts IV–VII).
[136] ECF No. 9.